UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BT MEDIA LLC and CONTENT IQ, LLC

        Plaintiffs,

    -against-

DALIA INTERNATIONAL OOD a/k/a
DALIA INTERNATIONAL LTD and
DALIA INTERNATIONAL/ADSPIRE LLC,

        Defendants

Case No.

**JURY TRIAL DEMANDED**

---

Plaintiffs BT Media LLC and Content IQ, LLC, by their attorneys, Bernstein Cherney LLP, for their Complaint herein, allege as follows:

## THE PARTIES, JURISDICTION AND VENUE

1. At all relevant times, BT Media LLC ("BT") was a limited liability company organized pursuant to the laws of the State of New York and maintaining its offices within the City and State of New York.

2. Content IQ, LLC ("CIQ") is a limited liability company organized pursuant to the laws of the State of New York, and maintaining its principal place of business at 1 World Trade Center 77th floor, Suite A, New York, NY 10007

3. BT is a wholly owned subsidiary of CIQ. (CIQ and BT are sometimes referred to herein, collectively as CIQ).

4. Upon information and belief, at all relevant times Dalia International OOD a/k/a Dalia International Ltd a/k/a Dalia International/Adspire LLC (together, "Dalia") was a Bulgarian company having a place of business in Sofia, Bulgaria.

5. There is more than $75,000.00 in controversy and thus subject matter jurisdiction is proper pursuant to 28 U.S.C. §1332 (a).

6. Venue is proper pursuant to 28 U.S.C. §1391(b)(3) and (c)(3). Defendant has consented to the jurisdiction of this Court.

## FACTS

7. CIQ is a digital publishing company which distributes news, information, and entertainment articles on a series of internet sites (the "Internet Sites").

8. In connection with such activities, CIQ contracts with third-party entities, which provide and deliver advertising to the Internet Sites, at rates negotiated between CIQ and such third parties, with fees payable based upon the number of viewable impressions or clicks for such advertisements.

9. Upon information and belief, on or about June 1, 2018, Dalia entered into an agreement with Verizon Media, a United Kingdom company (now known as Oath (UK) Limited and currently owned by Apollo Global Management) ["Verizon"] which provided that Dalia would distribute and publish on internet sites, certain advertisements delivered by Verizon's Yahoo division (the "Verizon Advertisements"), for consideration based upon the number of clicks on the Verizon Advertisements (the Verizon Agreement").

10. Subsequent to June 1, 2018, Dalia and BT entered into an agreement to assign the Verizon Agreement to BT.

11. In furtherance of that arrangement, Dalia transferred to BT, pursuant to a Rights Transfer Agreement dated June 25, 2019 (the "June Agreement"), a certain Flurry Account Number 313274 and Facebook page numbers 212199832697216 and 643670545972526 (the "Assigned Accounts").

12. The June Agreement provided, among other things, that Dalia "absolutely and irrevocably conveys, transfers and delivers to [BT] and its successors and assigns, free and clear of any liens, claims, and encumbrances and **without any reservation of rights**, and [BT] hereby accepts from [Dalia], all of [Dalia's] rights, title and interest in and to the [Assigned] Accounts." (Emphasis added).

13. The June Agreement provided, further, that Dalia would "promptly contact each relevant Vendor in order to communicate the change in the ownership of the account. In particular, it will communicate the billing and payment information of [BT]."

14. In accordance with the June Agreement, Dalia was required to advise Verizon that all rights and interests in and to the Assigned Accounts had been transferred and assigned to BT.

15. In accordance with the June Agreement, Dalia was required to advise Verizon that all revenues generated from distribution and publication of the Verizon Advertisements were to be delivered to BT.

16. Pursuant to the agreement between Dalia and Verizon, Dalia was to be compensated based upon revenues generated from distribution and publication of the Verizon Advertisements (the "Compensation Formula").

17. Based upon the June Agreement, BT was to be paid based upon the Compensation Formula.

18. One month later, on July 23, 2019, CIQ entered into a second agreement with Dalia (the July Agreement"), pursuant to which Dalia sold, assigned and delivered to Content IQ an "email account," which was the same account as had been assigned pursuant to the June Agreement, designated as Account # 313274 (the "Transferred Account").

19. The Transferred account related to the previously Assigned Accounts and constituted further agreement by CIQ to distribute the Verizon Advertisements in consideration for payments from Verizon on the Compensation Formula based upon the revenues recorded.

20. Pursuant to the July Agreement, Dalia agreed that it would not communicate directly with Verizon or its affiliates (including Yahoo) without prior consultation with CIQ; would provide to CIQ any future communications from Verizon; and would not respond to such communications without CIQ's prior approval.

21. Pursuant to the July Agreement, the parties consented to the jurisdiction of New York State federal and state courts and the application of New York law for the resolution of any disputes arising under the July Agreement.

22. In or about July 2019, Dalia informed Verizon that the Verizon Agreement and Assigned Accounts had been assigned to BT and its parent CIQ by virtue of the June Agreement and the July Agreement, and that all future payments due under the Verizon Agreement should be delivered to BT.

23. Pursuant to the June Agreement, the July Agreement, and the terms of the Assigned Accounts, Verizon proceeded to deliver to CIQ the Verizon Advertisements.

24. Pursuant to the June Agreement and the July Agreement, CIQ distributed and published the Verizon Advertisements on the CIQ Internet Sites.

25. The number of clicks on Verizon Advertisements distributed and published by CIQ on the CIQ Internet Sites generated revenues payable to CIQ of $1,065,425.70.

26. Upon information and belief, in or about January 2020, an individual identified as Eugenio D'Alessio ("D'Alessio"), who claimed to represent Dalia, contacted Verizon, and claimed that Alberto Lia, the individual who executed the June Agreement and July Agreement on behalf of Dalia, did not have authority to do so; that the June Agreement and July Agreement were invalid and should be considered void; and that no payments should be delivered to BT or CIQ.

27. At the time D'Alessio contacted Verizon, Verizon was in possession of the sum of $1,065,425.70 in outstanding revenues that had been collected pursuant to the Verizon Agreement and were then payable to CIQ (the "Outstanding Sum").

28. In or about March 2020, Verizon advised CIQ that it would not deliver the Outstanding Sum to CIQ unless Verizon first received a written agreement signed by BT and Dalia, agreeing to the distribution of the Outstanding Sum or, alternatively, a Court Order directing distribution of the Outstanding Sum.

29. Verizon has acknowledged its obligation to pay the Outstanding Sum to either Delia or BT.

30. The entirety of the Outstanding Sum was generated through the distribution and publication of the Verizon Advertisements on the CIQ Internet Sites.

31. CIQ incurred significant expenses, in excess of seven hundred thousand dollars ($700,000.00) in connection with distribution and publication of the Verizon Advertisements.

32. Dalia has refused to enter into a written agreement acknowledging BT's right to the Outstanding Sum.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

33. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 32 as if fully set forth hereat.

34. This Court may declare the rights and other legal relations of the parties to this dispute pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

35. D'Alessio, who purports to represent Dalia, has claimed that the June Agreement and July Agreement are void and that there has been no assignment of the Verizon Agreement or the Assigned Accounts to BT or CIQ.

36. Upon information and belief, the June Agreement and July Agreement were signed by an authorized representative of Dalia.

37. D'Alessio has refused to execute an agreement confirming the rights of BT and CIQ to the Outstanding Sum pursuant to the June Agreement and the July Agreement.

38. An actual and present controversy exists as to the validity of the June Agreement and the July Agreement, the assignment of the Verizon Agreement and Assigned Accounts from Dahlia to BT and CIQ, and the distribution of the Outstanding Sum.

39. CIQ and BT seek a declaratory judgment from this Court that the June Agreement is valid and enforceable; the July Agreement is valid and enforceable; the Verizon Agreement was assigned by Dalia to BT and CIQ; and the Outstanding Sum is due and payable to CIQ.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

40. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 39 as if fully set forth hereat.

41.     In accordance with the June Agreement and the July Agreement, and the assignment to BT of the Verizon Agreement, BT and CIQ distributed and published the Verizon Advertisements on the CIQ Internet Sites.

42.     The Verizon Advertisements distributed and published on the CIQ Internet Sites generated clicks that produced revenues in accordance with the Verizon Agreement.

43.     The revenues generated by the Verizon Advertisements distributed and published on the CIQ Internet Sites resulted in revenues payable to CIQ totaling the Outstanding Sum.

44.     CIQ and BT seek declaratory judgment that, as the party responsible for the distribution and publication of Verizon Advertisements generating the Outstanding Sum, Plaintiffs are entitled to the Outstanding Sum.

## **THIRD CLAIM FOR RELIEF**
**(Breach of Contract)**

45.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 44 as if fully set forth hereat.

46.     The June Agreement constituted a valid contract between BT and Dalia.

47.     BT performed its obligations under the June Agreement by distributing and publishing the Verizon Advertisements on the CIQ Internet Sites.

48.     Pursuant to the June Agreement, Dalia was required to advise Verizon that all revenues generated from distribution and publication of the Verizon Advertisements were to be delivered to BT.

49.     Dalia breached the June Agreement by failing to direct Verizon to deliver to BT revenues generated from distribution and publication of the Verizon Advertisements.

50.     Dalia breached the June Agreement by declaring it to be void and directing Verizon not to pay the Outstanding Sum to BT.

51.     BT has been damaged by Dalia's breach of contract in the Outstanding Sum and such additional amounts as to be determined by the trier of fact.

### FOURTH CLAIM FOR RELIEF
### (Breach of Contract)

52.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 51 as if fully set forth hereat.

53.     The July Agreement constituted a valid contract between CIQ and Dalia.

54.     CIQ performed its obligations under the July Agreement by distributing and publishing the Verizon Advertisements on the CIQ Internet Sites.

55.     Pursuant to the July Agreement, Dalia agreed that it would not communicate directly with Verizon or its affiliates (including Yahoo) without prior consultation with CIQ; would provide to CIQ any future communications from Verizon; and would not respond to such communications without CIQ's prior approval.

56.     Dalia breached the July Agreement by communicating with Verizon without prior consultation with CIQ; failing to provide CIQ communications from Verizon; and directing Verizon not to pay the Outstanding Sum to CIQ.

57.     CIQ has been damaged by Dalia's breach of contract in the Outstanding Sum and such additional amounts as to be determined by the trier of fact.

### FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment)

58.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 57 as if fully set forth hereat.

59. Upon information and belief, Dalia has received, and/or has attempted to receive, funds payable to CIQ from Verizon as a result of clicks generated on the Internet Sites for Verizon Advertisements.

60. Dalia played no role in the distribution of or generation of revenues from the Verizon Advertisements.

61. Plaintiffs have been injured and suffered losses as a result of Dalia's acceptance and retention of payments due to CIQ from Verizon.

62. Plaintiffs have been injured and suffered losses as a result of Dalia's efforts to divert and obtain funds due to CIQ from Verizon.

63. It is against equity and good conscience to permit Dalia to retain or further obtain funds payable to CIQ as a result of clicks generated by the Verizon Advertisements on the Internet Sites.

64. By reason of the foregoing, CIQ is entitled to recover all payments made by Verizon to Dalia as well as all payments sought to be obtained by Dalia from Verizon for clicks generated by Verizon Advertisements on the Internet Sites.

WHEREFORE, Plaintiff respectfully requests that the Court:

1. On the First Claim for Relief, enter declaratory judgment in favor of Plaintiffs;

2. On the Second Claim for Relief, enter declaratory judgment in favor of Plaintiffs;

3. On the Third Claim for Relief, enter judgment in favor of Plaintiff BT in the amount of $1,765,425.70, together with such additional sum as the finder of fact deems appropriate;

      4.      On the Fourth Claim for Relief, enter judgment in favor of Plaintiff CIQ in the amount of $1,765,425.70, together with such additional sum as the finder of fact deems appropriate;

      5.      On the Fifth Claim for Relief, enter judgment in the amount of all payments made and sought by Dalia from Verizon for clicks generated by Verizon Advertisements on the Internet Sites.

      6.      Award Plaintiffs their costs and disbursements; and

      7.      Grant such other and further relief, in law or equity, as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: December 31, 2021

BERNSTEIN CHERNEY LLP

By: /s/ Hartley T. Bernstein
767 Third Avenue, 30th Floor
New York, N.Y. 10017
Phone: (212) 381-9684
Fax: (646) 304-9535
hbernstein@bernsteincherney.com
Attorneys for Plaintiffs